**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**CHRISTOPHER LOADHOLT, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**-against-**

**GAME GOBLINS, LLC,**

**Defendant.**

**Civil Case No.:
1:22-cv-07367-AT**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

---

**MARCUS & ZELMAN, LLC**

**Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:    (732) 695-3282
Email: yzelman@marcuszelman.com
Attorneys for Plaintiff**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT…………………………...……...…….…..1

II.    STANDARD OF REVIEW……………………………………………………2

III.   ARGUMENT……………………………....…………………………......…..2

    A.  The Purpose Of The ADA…………………………………………………..2

    B.  Plaintiff's Claim Under The ADA…………………………………………4

    C.  Mr. Loadholt Has Standing To Bring His Claim……………………….....8

    D.  Defendant's Motion to Dismiss Plaintiff's NYCHRL Claims Should Be Denied…...13

IV.   CONCLUSION……………………………………………………………13

## TABLE OF AUTHORITIES

*Allaire Corp. v. Okumus,*

    433 F.3d 248 (2d Cir. 2006)…………………………………………………………..2

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*

    671 F.3d 140 (2d Cir. 2011)…………………………………………………………..2

*Angeles v. Grace Prod., Inc.,*

    No. 20-CV-10167 (AJN), 2021 WL 4340427 (S.D.N.Y. Sept. 23, 2021)…………………7

*Ashcroft v. Iqbal,*

    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………………………2

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)…………………………………2

*Calcano v. Swarovski N. Am. Ltd.,*

    36 F.4th 68 (2d Cir. 2022)…………………………………………………………...10

*Camacho v. Vanderbilt Univ.,*

    2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019)…………………………………………...9, 11

*Chalas v. Barlean's Organic Oils, LLC,*

    No. 22 CIV 04178 (CM), 2022 WL 17156838 (S.D.N.Y. Nov. 22, 2022)…………………5

*Del-Orden v. Bonobos, Inc.,*

    No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)……………..........4

*Doe v. Montefiore Med. Ctr.,*

    2013 WL 624688 (S.D.N.Y. Feb. 19, 2013)…………………………………………...13

*Feltzin v. Clocktower Plaza Properties, Ltd.,*

    2018 WL 1221153 (E.D.N.Y. Mar. 8, 2018)……………………………………………9

*Gonzalez v. Bahar Corp.,*

    No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567 (E.D.N.Y. Apr. 3, 2019)…11

*Hunter v. Palisades Acquisition XVI, LLC,*

    2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017)…………………………………………...13

*Juscinska v. Paper Factory Hotel, LLC,*

    No. 18-CV-8201 (ALC), 2019 WL 2343306 (S.D.N.Y. June 3, 2019)…………………..12

*Kreisler v. Second Ave. Diner Corp.,*

    731 F.3d 184 (2d Cir. 2013)………………..………………………………..………8, 11

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)……………………………………………………………....8

*Markett v. Five Guys Enterprises LLC*,
    No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)…………..…………4

*Monge v. 405 Hotel LLC,*
    2021 WL 982866 (E.D.N.Y. Feb. 24, 2021)…………………………………..………10

*Noel v. New York City Taxi and Limousine Comm'n,*
    687 F.3d 63 (2d Cir. 2012)……………………………………………………3

*Pallozzi v. Allstate Life Ins, Co.*,
    198 F.3d 28 (2d Cir. 1999)…………………………………...……………5

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001)…………………………………………………………..2, 3

*Range v. 535 Broadway Grp. LLC*,
    No. 17CV0423, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019)……………………………13

*Quezada v. U.S. Wings, Inc.,*
    No. 20 CIV. 10707 (ER), 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021)…………………..12

*Roberts v. Royal Atl. Corp.*,
    542 F.3d 363 (2d Cir. 2008)…………………………………………………..4

*Roman v. Greenwich Vill. Dental Arts P.C.*,
    No. 21-CV-5939 (JGK), 2022 WL 4226026 (S.D.N.Y. Sept. 13, 2022)…………………..5

*Romero v. 88 Acres Foods, Inc.*,
    580 F. Supp. 3d 9 (S.D.N.Y. 2022)……………………………………………...........5

*Rosa v. 600 Broadway Partners, LLC*,
    175 F. Supp. 3d 191 (S.D.N.Y. 2016)…………………………………………..9

*Sanchez v. NutCo, Inc.,*
    No. 20-CV-10107 (JPO), 2022 WL 846896 (S.D.N.Y. Mar. 22, 2022)…………………..12

*Slade v. Life Spectacular, Inc.*,
    No. 22-CV-0037 (ALC), 2022 WL 17542029 (S.D.N.Y. Dec. 5, 2022)…………………..5

*Sullivan v. Study.com LLC*,
    No. 18-CV-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019)…………………..5

*Tavarez v. Moo Organic Chocolates, LLC*,

     No. 21-CV-9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022)…………………..5

*Thorne v. Formula 1 Motorsports, Inc.*,

     No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)………………...4, 5

*Wu v. Jensen-Lewis Co.*,

     345 F. Supp. 3d 438 (S.D.N.Y. 2018)……………………………………………..5, 6

Statutes and Other Sources

28 C.F.R. § 36.201………………………………………………………………………………2

29 C.F.R. § 1630.2(j)(3)(iii)……………………………………………………………………….4

42 U.S.C. § 12101(a)(1)………………………………………………………………………...3

42 U.S.C. § 12101(a)(2)………………………………………………………………………...3

42 U.S.C. § 12101(a)(3)………………………………………………………………………...3

42 U.S.C. § 12182(a)………………………………………………………………………2, 3

42 U.S.C. § 12182(b)(2)(A)(iii)…………………………………………………………………5

## I.    PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint.  Christopher Loadholt commenced this action via the filing of a Complaint which alleged that the Defendant violated the Americans with Disabilities Act (the ADA).  As alleged in the Amended Complaint, the Defendant operates an online store at its website www.gamegoblins.com,  from where it sells toys, novelties, games and apparel to the general public.  Mr. Loadholt maintains that the Website is not compatible with the screen-reading software used by visually-impaired individuals such as himself, and that he and the putative class members have thereby been denied the same access to the Defendant's online store as those afforded to sighted individuals.  After Defendant filed its first Motion to Dismiss the Complaint, the Plaintiff filed an Amended Complaint.

Defendant now again moves to dismiss this action, based primarily on a single argument. Specifically, Defendant argues that Mr. Loadholt lacks standing to sue, claiming that he failed to adequately plead the injury he suffered as a result of not being able to purchase these products on the Defendant's website with the same ease as a sighted individual.  This argument is meritless, as a disabled person whose rights have been violated under the ADA clearly has standing to seek redress for those violations.  And Mr. Loadholt specifically alleged the accessibility barriers he encountered, the multiple dates on which he encountered these barriers, and the ways these issues prevented him from shopping at the Defendant's store in the same manner available to a non-disabled person.

A blind person who suffers discrimination by a shopkeeper has been harmed and has standing to sue.  For the reasons set forth below, it is respectfully submitted that the Defendant's Motion to Dismiss the Amended Complaint should be denied in its entirety.

## II.    STANDARD OF REVIEW.

To survive a motion to dismiss pursuant to Federal Rule 12(b) (6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006).  The same standard is applied to Motions to Dismiss filed under FRCP 12(b)(1).  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

## III.    ARGUMENT.

### A.  The Purpose Of The ADA.

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a); see 28 C.F.R. § 36.201.  As the Supreme Court has repeatedly recognized, Congress's purpose in enacting the ADA was broad: "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

In enacting the ADA, Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." 42 U.S.C. § 12101(a)(1). Moreover, "Congress found that 'historically, society has tended to isolate and

2

segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' " *PGA Tour*, 532 U.S. at 674-75.  Congress identified many areas of society in which individuals with disabilities faced persistent discrimination, including "employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' " *PGA Tour*, 532 U.S. at 675.  To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.*  "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n,* 687 F.3d 63, 68 (2d Cir. 2012).

### B. Plaintiff's Claim Under The ADA.

Plaintiff's main claim in this action arises under the ADA.  Section 302(a) of Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Thus, to establish a Title III violation, a plaintiff must demonstrate "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of

public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

The first element of the *Roberts* test is easily met here. The Amended Complaint alleges that Mr. Loadholt "is visually impaired and legally blind, in that he has visual acuity with correction of less than or equal to 20 x 200." *See,* Docket 17, ¶5. The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Mr. Loadholt is disabled because he is substantially limited in the major life activity of seeing. *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: ... blindness substantially limits seeing"). "A legally blind person who requires screen-reading software to access the internet is disabled within the meaning of the ADA." *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, *2 (S.D.N.Y. Dec. 19, 2019).

The second element is also easily met here, as every single court in this District has agreed. *See e.g., Del-Orden v. Bonobos, Inc.,* 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017)(Engelmayer, J.)("A commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access"); *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568 (S.D.N.Y. July 21, 2017) (holding that a fast food restaurant's website, was "covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute"); *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019); *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 20 (S.D.N.Y. 2022); *Tavarez v. Moo Organic Chocolates, LLC*,

No. 21-CV-9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022); *Roman v. Greenwich Vill. Dental Arts P.C.*, No. 21-CV-5939 (JGK), 2022 WL 4226026, at *3 (S.D.N.Y. Sept. 13, 2022)("many well-reasoned decisions in this Circuit have found that websites are places of public accommodation, with or without a nexus to a physical place"); *Chalas v. Barlean's Organic Oils, LLC*, No. 22 CIV 04178 (CM), 2022 WL 17156838, at *6 (S.D.N.Y. Nov. 22, 2022) ("the best guess, in light of *Pallozi*, is that our Circuit, were it to consider the issue, would come down on the side of the First and Seventh Circuits, and conclude that a website can be a 'place of public accommodation' within the meaning of Title III of the ADA"); *Slade v. Life Spectacular, Inc.*, No. 22-CV-0037 (ALC), 2022 WL 17542029, at *3 (S.D.N.Y. Dec. 5, 2022).

Finally, the third *Roberts* element is met here as well. With respect to the third element, a website "is liable for 'discrimination' within the meaning of the ADA if, among other things, it fails to provide 'auxiliary aids and services' to ensure that the disabled are treated the same as other individuals." *Sullivan v. Study.com LLC*, 2019 WL 1299966, at *3 (S.D.N.Y. Mar. 21, 2019), citing 42 U.S.C. § 12182(b)(2)(A)(iii). In *Thorne,* the plaintiff alleged that "Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links." *See,* 2019 WL 6916098, at *3. Judge Oetken found that "these allegations, taken as true, plausibly show that Formula 1 discriminated against Thorne by denying him a full and equal opportunity to use its website." *Id.* Similar allegations were found sufficient to state a claim by Judge Ramos in *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438 (S.D.N.Y. 2018):

> In her complaint, Wu cites four such barriers. First, Wu alleges that graphical images on Jensen-Lewis's website lack alternative text ("alt-text") or a text equivalent. Alt-text enables screen-reading software to vocalize a description of an image to users. Second, Wu alleges that Jensen-Lewis's website has empty links that contain no text. These empty links' functionality is confusing to screen-reader users. Third, Wu alleges that the website contains redundant, adjacent links. Redundant, adjacent links go to the same URL address, resulting in additional, unnecessary navigation efforts for screen-reader users. Fourth, Wu alleges that

linked images on the website lack alt-text. Without alt-text, a user would not know what function a linked image has when he or she clicks on it.

The Court finds that these allegations, taken as true, plausibly show that Jensen-Lewis discriminated against Wu by denying her a full and equal opportunity to use its website. They are specific facts concerning Jensen-Lewis's website. Consequently, Wu has made a plausible claim under Title III of the ADA.

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d at 443.

In this case, the allegations in the Amended Complaint are far more specific than those pled in *Thorne* and *Wu.* The Amended Complaint alleges that, on Mr. Loadholt has thrice – on June 18, 2022, June 25, 2022 and November 20, 2022 – recently visited the Defendant's website with the intention of shopping for board games that he can play with friends when he hosts at his home. *See,* Docket 17, ¶23, 30. However, as alleged in the Amended Complaint, "many features on the Website fail to accurately describe the contents of graphical images, fail to properly label title, fails to distinguish one page from another, contain multiple broken links, contain headings that do not describe the topic or purpose, and the keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible." *See,* Docket 17, ¶26. If a Website does not accurately describe the content of a graphical image, for example, a visually impaired individual who is not fully blind may see a fuzzy image on the screen, but cannot select the image to hear his screen-reader software describe what the image depicts. *See e.g., Wu,* 345 F. Supp. 3d at 443 (explaining that "Alt-text enables screen-reading software to vocalize a description of an image to users" and finding that such allegations are sufficient to survive a motion to dismiss).

The Amended Complaint goes even further, and gives several even more specific examples of accessibility issues that Mr. Loadholt encountered on the Defendant's website. For example,

- The dropdown menus on the Website do not work using a keyboard, which is the only way the Plaintiff is able to navigate the Website since, like most visually impaired individuals, he cannot use a mouse. *See,* Docket 17, ¶28(a).

6

- Using the screenreader software, Plaintiff was unable to access the submenus to be able to browse the products being offered for sale. *See,* Docket 17, ¶28(b).

- Multiple links were labelled as 'blank' which made it impossible to successfully browse the items and categories on the website, since the Plaintiff had no idea which items he was looking at or where he was being directed to. *See,* Docket 17, ¶28(c).

- The site was not optimized to provide information to the screenreader, so even when the Plaintiff would try to click on an item for sale, he was unable to obtain any information regarding the item, including what item he was viewing or the price for that item. *See,* Docket 17, ¶28(d).

- The checkout form fields are mislabeled, so Plaintiff had no idea – while using the screen reader – which information to input into which box. This would prevent the Plaintiff from checking out because the site would simply provide an error warning that information was missing, but would not specify what that missing information was. *See,* Docket 17, ¶28(e).

These allegations are specific and describe a website which plainly does not work properly with the screenreader software commonly employed by the blind community, and which clearly does not offer visually impaired individuals the same access to the Defendant's online store as that offered to sighted individuals. These allegations are more than sufficient to put the Defendant on notice as to several of the exact accessibility barriers that Mr. Loadholt encountered when he tried to navigate the Defendant's website in order to purchase these board games to play with his friends. *See also, Angeles v. Grace Prod., Inc.*, No. 20-CV-10167 (AJN), 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021)("Defendant argues that she did not state which exact product she intended to buy and on which page, but that is not necessary on this set of facts. The central

allegation in her complaint is that she went to Defendant's website with the intent of making a

purchase but was not able to properly navigate the different pages of Defendant's website, nor was

she able to differentiate between Defendant's various products in order to decide which one, if any,

she wanted to purchase").

### C.  Mr. Loadholt Has Standing To Bring His Claim.

Mr. Loadholt has standing to bring this lawsuit because he has suffered a concrete harm

that is particularized to him – being personally subjected to discriminatory treatment.  "To satisfy

constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a)

concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury

and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable

decision." *Kreisler v. Second Ave. Diner Corp.,* 731 F.3d 184, 187 (2d Cir. 2013); *see also, Lujan*

*v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Where, as here, a plaintiff seeks injunctive

relief, he also must demonstrate "that the identified injury in fact presents a real and immediate

threat of repeated injury." *Kreisler,* 731 F.3d at 187 (citation and internal quotation marks

omitted).

Applying these requirements in the ADA context, courts have found "standing (and

therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was

reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to

infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business]

to plaintiff's home, that plaintiff intended to return to the subject location." *Id.* at 187-88.  The

courts have also held that "in reviewing standing under the ADA, a broad view of constitutional

standing is appropriate because private enforcement suits are the primary method of obtaining

compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9 (S.D.N.Y. Dec.

4, 2019); *Feltzin v. Clocktower Plaza Properties, Ltd.*, 2018 WL 1221153, at *3 (E.D.N.Y. Mar.

8, 2018); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016).

In this case, Mr. Loadholt specifically identified how he was trying to browse the

Defendant's online store in order to buy board games so he could host friends and play games with

them, but was prevented from doing so because of the Website's incompatibility with his screen-

reading software.  Mr. Loadholt specifically also detailed his intent to return to the Website once

it is made accessible.   Mr. Loadholt visited the site on June 18, 2022, but was not able to browse

the Website in the same manner as a sighted individual because of the accessibility barriers

outlined above.  *See,* Docket 17, ¶23-24.  Mr. Loadholt then returned to the Website two more

times - on June 25, 2022 and November 20, 2022 - to continue shopping at the Defendant's online

store, so that he could purchase these products to play with his friends.  *See id.*, ¶23-31.  But, again,

he was prevented from doing so, because of those same accessibility barriers.  *See id.*

The Amended Complaint specifically alleges that "Plaintiff would still like to return to the

Website to browse and potentially purchase these products once the online store is made accessible

to him, and intends to do so once the site is made accessible." *See id.,* ¶33.  And as Mr. Loadholt's

three visits to the Website within the past six months make clear, Mr. Loadholt's desire to continue

shopping at the Defendant's online store is not something that is merely conjectural or conclusory

– he (1) went to that Website to purchase board games so he could play them with his friends, (2)

was not been able to purchase those products on that date, and (3) has already returned to the

Website two more times to try to finish purchasing those very products.[1]   These facts make this

case distinguishable from the *Calcano* case relied on by the Defendant, which addressed the

---

[1] *Harty v. Simon Prop. Grp., Ltd. P'ship*, 428 F. App'x 69 (2d Cir. 2011) (finding standing where Plaintiff indicated he planned to "return to the property to avail himself of the goods and services offered to the public" to determine if the property was compliant).

inadequate allegations of plaintiffs who vaguely and implausibly alleged the intent to return to physical locations that they were nowhere near.[2]

In *Calcano,* the plaintiffs were all visually impaired individuals who alleged that they wanted to buy gift cards at the defendants' physical stores, and that they called the stores to inquire about these cards but were told that the gift cards were not offered with Braille. *Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68, 72 (2d Cir. 2022). None of the plaintiffs even alleged that they actually visited the store to attempt to buy such a gift card. The Second Circuit found that, in such circumstances, the plaintiffs did not demonstrate that they had standing to sue for prospective relief, because they offered "only naked assertions of intent to return to Defendants' stores if they offer braille gift cards." *Id.,* at 77–78.

The facts in this case are markedly different, where the Plaintiff has already visited the Defendant's online store three separate times in order to purchase these very board games that he is still shopping for. By contrast to *Calcano*, where the Second Circuit scoffed at the notion that someone would travel an hour to buy a gift card from a shaving store, it is far more plausible that a plaintiff would carry out their stated intention of returning to a website. *See, Monge v. 405 Hotel LLC,* 2021 WL 982866, at *7 (E.D.N.Y. Feb. 24, 2021), report and recommendation adopted, 2021 WL 980870 (E.D.N.Y. Mar. 15, 2021)("A plausible intention or desire does not require a specific date for plaintiff's return to the website. Plaintiff's statements that he would return to the website in the future to assess whether he could make a reservation are sufficient to confer standing"), citing *Gonzalez v. Bahar Corp.*, No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567, at

---

[2] *See e.g., Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68, 77 (2d Cir. 2022)("Murphy asserts that he would return to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic for its food. Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey Mike's impossible. Calcano plans to travel from somewhere in the Bronx to Columbus Circle for a shaving supply gift card").

*6-8 (E.D.N.Y. Apr. 3, 2019)(noting that "this 'plausible intention or desire' does not require a specific date for plaintiff's return to the location, or in this case, website", and finding that the plaintiff's "desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan*, [the plaintiff] is not alleging an intent to return to a physical location, let alone a distant one"); *Camacho v. Vanderbilt University*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019) (stating that there was a sufficiently "reasonable inference that the plaintiff will return to the website" when the plaintiff's "allegations establish that plaintiff (i) tried to visit the website on multiple occasions; (ii) has stated motivation for returning to visit the website in the future; and (iii) may easily return to the website should it be made accessible").

Under these facts, it is clear that Mr. Loadholt has standing to sue.   In *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, Judge Failla held that the ADA plaintiff had standing to sue because of similar accessibility issues with a website:

> Plaintiff has sufficiently alleged each of the three factors necessary to find standing under the ADA. First, Plaintiff claims that he suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188.

> *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9.

In *Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC), 2019 WL 2343306 (S.D.N.Y. June 3, 2019), Judge Carter similarly found that an ADA plaintiff who has been denied equal access to a website properly stated a claim, under very similar allegations.  In that case, Judge Carter rejected a motion to dismiss, where:

11

as alleged in the Complaint, Plaintiff was not able to browse Defendant's website and make a reservation with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms. Plaintiff was unable to discern the accessible features of rooms that would meet her needs. Defendant's website did not provide Plaintiff with the opportunity to evaluate the suitability of common areas and the amenities Defendant provides to its guests. Taking the facts in the Complaint as true, it is plausible that, at the time Plaintiff visited Defendant's website, it was not compliant with the ADA as interpreted by the DOJ.

*Juscinska v. Paper Factory Hotel, LLC*, 2019 WL 2343306, at *3.

Finally, in *Quezada v. U.S. Wings, Inc.*, No. 20 CIV. 10707 (ER), 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021), Judge Ramos found that the require 'intent to return' was adequately established as well.  In that action, the plaintiff alleged that he intended to "purchase leather jackets and military branded apparel in the future from the website" and "remains hopeful that the accessibility barriers are or will be cured."  *Id.,* at *3.  Judge Ramos found that these allegations sufficed to demonstrate a plausible intent to return to the site:

The Court finds that Quezada has sufficiently shown an intent to return to the website. First, Quezada does specifically state his intent to return to the website if accessibility issues were remediated. Doc. 13 ¶ 35. Second, there is no information suggesting that U.S. Wings does not deliver to individuals in Quezada's jurisdiction as in Guglielmo. As stated in the Amended Complaint, the products offered by U.S Wings are available for purchase and delivery nationwide. Id. ¶ 24. As websites are already easily accessible at any moment, Quezada's claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing.

*Quezada v. U.S. Wings, Inc.*, 2021 WL 5827437, at *4.  *See also, Sanchez v. NutCo, Inc.,* No. 20-CV-10107 (JPO), 2022 WL 846896, at *3 (S.D.N.Y. Mar. 22, 2022)(agreeing that ADA plaintiff sufficiently alleged an intent to return to the defendant's website, where "Sanchez alleges that he unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured").

**D. Defendant's Motion to Dismiss Plaintiff's NYCHRL Claims Should Be Denied.**

Defendant first challenges the Plaintiff's ability to bring his NYCHRL claims, based on the same lack-of-standing argument already debunked above. Defendant then moves to dismiss the Plaintiff's request for punitive damages. But that Motion cannot be made at this stage of the litigation and is premature. *Range v. 535 Broadway Grp. LLC*, No. 17CV0423, 2019 WL 4182966, at *7 (S.D.N.Y. Sept. 3, 2019)(in ADA case, holding that "To the extent Defendants move to "dismiss" Range's request for punitive damages, that motion is procedurally premature. Punitive damages are a type of damages, not a claim for relief"); *See also, Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017); *Doe v. Montefiore Med. Ctr.*, 2013 WL 624688, at *7 (S.D.N.Y. Feb. 19, 2013).

**IV.    CONCLUSION.**

It is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety. In his Amended Complaint, the Plaintiff specifically describes the three dates he visited the Defendant's online store, the reasons he visited that store and the accessibility barriers that prevented him from completing his purchases. While the Defendant insists that more is needed, no such heightened pleading standard is required at this early stage of the case. Finally, the Plaintiff adequately alleges his intent to return to the subject website and complete his purchase of the products he wanted to buy from the Defendant's online store, giving him standing to continue to seek injunctive relief.

For these reasons, it is respectfully submitted that the Defendant's Motion to Dismiss the Amended Complaint should be denied in its entirety.

Dated: January 31, 2023

Respectfully submitted,

13

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:        (732) 695-3282
*Attorney for the Plaintiff*
*Christopher Loadholt*